NOT FOR PUBLICATION                                                                                      (Doc. No. 15)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                            :
TYHEEM BOOKMAN,                             :
                                                            :
               Petitioner,           :
                                                            :          Civil No. 09-1441 (RBK)
               v.                             :          **OPINION**
                                                            :
UNITED STATES OF AMERICA,          :
                                                            :
               Respondent.         :
_____:

**KUGLER**, United States District Judge:

      This matter comes before the Court on Petitioner Tyheem Bookman's Amended Petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 15). Petitioner argues that he was denied effective assistance of counsel. For the reasons discussed below, the Amended Petition is denied in part and granted in part. The Court shall vacate the sentence and shall resentence Petitioner with an appropriate criminal history score.

**I.**     **BACKGROUND**

      At approximately 6:30 p.m. on November 25, 2005, Officer Gabriel Rodriguez of the Camden City Police Department observed Bookman and his cousin near the corner of Lewis and Whitman Streets, engaging in some kind of hand-to-hand activity. Officer Rodriguez was in his patrol car at the time and testified that he was approximately fifteen feet away. After observing this activity, Rodriguez turned the corner and saw Bookman reach for his waistband where

1

Rodriguez observed "what appeared to be the butt of a handgun which [Bookman] covered right away with his T-shirt jacket[.]" Resp. br., Ex. A at 28. Officer Rodriguez called out to Bookman who walked away. Rodriguez then gave chase, ultimately apprehending Bookman in the home of his aunt. During the chase, Rodriguez saw Bookman discard a gun, which was recovered from the top step of the basement steps of the home.

On March 1, 2006, a federal grand jury returned a one count indictment charging Bookman with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2). This Court held an evidentiary hearing on August 8, 2006 on Petitioner's motion to suppress the firearm seized during his arrest based on an alleged lack of probable cause. At the suppression hearing, Bookman testified and denied possessing the weapon. The Court denied his motion. During the hearing and through his subsequent trial and appeal, Petitioner was represented by counsel.

This Court held a trial from October 24 to October 27, 2006. One of the central issues of the trial was whether it was too dark for Officer Rodriguez to have allegedly seen a gun in Bookman's waistband. Seemingly the jury concluded that it was not and it returned a guilty verdict.

Before the verdict, however, and importantly for purposes of the pending Petition, the Government made the following statement during rebuttal summation:

> You need to evaluate each and every one of those witnesses and say did they come in and did they tell the truth. And if you determine collectively that those officers took that stand and lied to you, then you need to acquit. *You need to find the defendant not guilty because you should expect more from your government.*

Pet. br., Ex. E at 70:7-12 (Oct. 26, 2006 trial transcript) (emphasis added). Petitioner's counsel

objected and stated "[t]hat's not what the question is." Pet. br., Ex. E at 70:13-14.  The Court overruled the objection.  Shortly thereafter, the Government made the following additional statement:

> Ladies and gentlemen, in the conclusion is that [sic] [Petitioner's attorney's] summation he spends a great deal of time telling you about the Constitution, about the National Constitution Center and how – if you do return a verdict of guilty, people will have [died] in vain.  That's not the case.  We are here today because the defendant will be afforded his constitutional right to a trial.  And we have protected his constitutional rights.  *And you should not feel threatened to find the defendant guilty*.

Pet. br., Ex. E at 70-71:20-25, 1-3 (emphasis added).  This second statement did not draw an objection.

On March 2, 2007, the Court held a sentencing hearing.  At the hearing, the Government argued for an obstruction of justice enhancement based on Bookman's testimony at the suppression hearing.  Bookman objected.  After hearing argument, the Court found that a two-level enhancement for obstruction of justice was warranted.  All parties agreed that Bookman's criminal history category was IV.  Thus, the Court sentenced Bookman to a 70-month term of imprisonment, see 06-cr-149, Doc. No. 40, which was within the Sentencing Guidelines range of 63 to 78 months for an offense level of 22.

On March 9, 2007, Bookman filed a notice of appeal challenging 1) the Court's decision to allow testimony by the arresting officers that the arrest occurred in a high crime area, 2) the Court's overruling of Bookman's objection to the Government's statements during rebuttal summation; and 3) the Court's consideration of the rehabilitative potential of prison for Bookman.  The Third Circuit Court of Appeals affirmed on all grounds.  See U.S. v. Bookman, 278 Fed. Appx. 181 (3d Cir. 2008).

On March 25, 2009 Bookman filed a pro se petition under 28 U.S.C. § 2255. This Court later appointed counsel and Bookman filed the Amended Petition on January 29, 2010. All parties having briefed the matter, the Amended Petition is now ripe for review.

## II.    STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move before the court that imposed the sentence to vacate, set aside, or correct the sentence if it were imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" To establish a right to habeas corpus relief, a petitioner must demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989). Section 2255 is the preferred method for advancing an ineffective assistance of counsel claim. U.S. v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994). A petitioner is entitled to a hearing to determine issues of fact and to make conclusions of law, unless the files and records of the case "conclusively show" that the petitioner is entitled to no relief. § 2255(b).[1]

## III.    DISCUSSION

Petitioner argues that he was denied effective assistance of counsel because 1) his trial counsel failed to object (or properly object) during the rebuttal summation when a) the

---

[1] The Court finds no need for a hearing in this matter. As is discussed below, the record conclusively shows that Petitioner is not entitled to relief on five of his six challenges. As to the sixth challenge, the Government agrees that he is entitled to relief, thus nothing is in dispute to resolve at a hearing.

4

Government vouched for the credibility of its witnesses and b) the Government implied a threat to the jurors' safety; 2) trial counsel failed to take pictures that would have cast doubt on the Government's evidence; 3) appellate counsel did not challenge this Court's suppression ruling; 4) appellate counsel failed to challenge this Court's findings on the obstruction of justice enhancement; and 5) trial counsel improperly calculated Petitioner's criminal history score. Pet. br. at 5-20; Pet. supp. br. at 1-4. The Government challenges each of these arguments except with respect to the criminal history score, which it concedes warrants a resentencing. The Court finds the Government's positions compelling and denies the Amended Petition in part and grants it in part.

    A.    **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a party must establish 1) deficiency of counsel's performance and 2) prejudice caused by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). Only the most serious errors constitute deficient performance. Id. (describing errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"). Prejudice exists only when the defendant is denied a fair trial capable of producing a reliable result. Id.

The first Strickland prong is an objective standard of "reasonableness under prevailing professional norms." Id. at 688. The Constitution requires a fair trial, not some higher quality of legal representation. See id. at 688-89. Thus, the standard is "highly deferential" and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second Strickland prong is a subjective, totality-of-the-circumstances analysis of

whether counsel's conduct "actually had an adverse effect on the defense." Id. at 693. A speculative or hypothetical effect is not enough. Id. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### 1.   Vouching

Turning to the merits of Petitioner's challenge, he first argues that when the Government made the statement that the jurors "should expect more from your Government," the Government engaged in impermissible vouching. Pet. br. at 7; Pet. reply at 1-3. Petitioner asserts that even though his trial counsel objected, he did not make the proper objection and thus provided ineffective assistance. Pet. br. at 6. The Government responds that the above statement was not vouching at all. Resp. br. at 9-11. The Court finds Petitioner's position untenable.

First, the Court is hard-pressed to believe that even though Petitioner's trial counsel did object to the Government's statement, counsel's failure to make the "right" objection prejudiced the outcome. Petitioner is entitled to "effective" assistance of counsel, not the best assistance or even mistake-free assistance. See U.S. v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006). A counsel's failure to make every objection, or even making the wrong objection, is not grounds for retrial. See Shaw v. Campbell, No. 05-1506, 2008 WL 744731, at *10-11 (E.D. Cal. Mar. 18, 2008), report & rec. adopted by No. 05-1506, 2008 WL 2225622 (E.D. Cal. May 28, 2008). In this case, counsel's in-trial objection led this Court and the Third Circuit both to give the statement careful review, both concluding it was permissible. See Pet. br., Ex. E at 70:15-18;

6

U.S. v. Bookman, 278 Fed. Appx. 181, 183 (3d Cir. 2008).[2] Even if the objection should have been vouching and not the objection-made (i.e., counsel made a mistake), Petitioner has not demonstrated how making the "wrong" objection had a reasonable probability of effecting the outcome. This is simply not a situation where trial counsel missed a clear opportunity to object, on the contrary, trial counsel clearly flagged the Government's statement for review. Neither of the courts charged with that review, this one or the Third Circuit, found anything improper about the Government's statement.

Second, regardless of the above, the objected statement is not vouching. Vouching is "an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." U.S. v. Walker, 155 F.3d 180, 184 (3d Cir. 1998). Vouching is cause for concern because 1) it can convey to the jurors that the prosecutor possesses other information that supports the charges against the defendant, thus jeopardizing the defendant's right to be tried on the evidence presented at trial; and 2) the prosecutor's opinion carries the "imprimatur of the Government," and may thus induce the jurors to trust the Government's judgment over their own. Id. The test for vouching is twofold: "1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and 2) this assurance is based on either the prosecutor's personal

---

[2] The Third Circuit specifically held that the Government's statement did not speak to the burden or proof, i.e., it did not lower the burden of proof for the Government. Bookman, 278 Fed. Appx. at 183. The Court agrees with that conclusion, but even if it is wrong, at worst the Government's statement *increased* the burden on the prosecution. The Government's statement seems to state that even if the jurors would otherwise find the defendant guilty despite dishonest prosecutorial witnesses, they should find him not guilty if they find any evidence of lying. Thus, Petitioner cannot show prejudice from this statement going to the jury since the Government at worst made it harder to meet its burden.

7

knowledge, or other information not contained in the record." Id. at 187.  A defendant claiming vouching must do more than show the prosecutor assured credibility of its witnesses, instead the defendant must point to an implicit or explicit reference to either the prosecutor's personal knowledge or information not contained in the record.  Id.

On this collateral challenge, Petitioner has not met either prong of the vouching test.  No evidence whatsoever exists that the Government vouched for the credibility of its witnesses.  The Government's comment merely states the unremarkably proposition that in a credibility intensive case, if the jury finds that prosecution's witnesses lied, the jury should hold it against the Government.  The statement was not something akin to "We don't take liars.  We don't put liars on the stand.  We don't do that."  See U.S. v. DiLoreto, 888 F.2d 996, 999 (3d Cir. 1989) (finding vouching), overruled on other grounds by U.S. v. Zehrbach, 47 F.2d 1252 (3d Cir. 1995); Pet. reply at 2 (citing DiLoreto).  It was more akin to the Government does not try to put liars on the stand, and if you find that it did, you should hold it against the Government.  Furthermore, Petitioner has not directed the Court's attention to how the Government's statement implied knowledge outside of the record.  That failing alone is fatal.  Thus, there is no evidence of vouching and trial counsel's failure to so object did not result in ineffective assistance of counsel.  See U.S. v. Narducci, 18 F. Supp. 2d 481, 497 (E.D. Pa. 1997) ("Since the government's comments in closing were not improper vouching, [trial counsel's] failure to object is not deficient conduct.").  Therefore, Petitioner is not entitled to relief on this challenge.

    **2.**    **Threats**

Bookman further asserts that his counsel was ineffective for failing to object altogether to the Government's rebuttal statement that the jurors "should not feel threatened to find the

defendant guilty." Pet. br. at 8. He insists that his counsel's outright failure to object to that statement caused an unjust result because the jurors were led to believe they were at personal risk for failing to convict. Pet. br. at 9-10. The Government responds that the statement was not a reference to some undisclosed threat, but rather was a response to Petitioner's trial counsel's patriotic rhetoric during summation. Resp. br. at 12. The Court agrees.

The trial transcript from closing arguments reveals that Petitioner's trial counsel made the following statement:

> And, ladies and gentlemen, if the contradictory, inequality [sic], confusing, utterly lacking evidence in this case is enough to convict somebody, then these court houses are nothing but props and all those people have died in vain. And that Constitution Center? Just a museum, a reminder, some quaint idea that some people thought were [sic] important one time.

Pet. br., Ex. E at 65:3-9. It seems clear to the Court that the Government's statement did not, as Petitioner infers, imply that the jurors were in some danger if they failed to convict. See Pet. br. at 9; Pet. reply at 4. Instead, the statement is merely responsive to Petitioner's trial counsel's pathos argument that a conviction was somehow unpatriotic. The Government did not introduce anything improper into the proceedings, and thus Petitioner's trial counsel had nothing to object to. In short, trial counsel was not ineffective.

### 3. Failure to Take Pictures

Petitioner next asserts that he received ineffective assistance of counsel because his trial counsel failed to take pictures of the scene under the appropriate lighting conditions, photos that he alleges would have cast doubt on the credibility of the Government's witnesses. Pet. supp. br. at 2-3. The Government points out that Petitioner's trial counsel in fact thoroughly investigated lighting at the scene and put on extensive evidence to cast doubt on the Government's witnesses.

9

Resp. br. at 14.  The Court concurs.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation."  U.S. v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997); see also Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691.  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 691-92.  Even if counsel was deficient in the decision not to investigate, a petitioner must also show prejudice from the failure.  See Kauffman, 109 F.3d at 190-91.

Here, while Petitioner makes much of his trial counsel's failure to take pictures under specific lighting conditions, the record clearly reveals that his counsel investigated the scene and the conditions of lighting, and presented significant evidence at trial in support of Petitioner's defense.  See Resp. br. at 14 (detailing trial counsel's efforts at demonstrating and refuting lighting conditions).  That perhaps trial counsel could have done something else or something in addition to what was done to show the lighting is the kind of hindsight inquiry that Strickland prohibits.  See 466 U.S. at 689.  Moreover, the Government attaches an affidavit from Petitioner's trial counsel wherein she states that she made a strategic decision to present the lighting in a certain way so as to minimize support for the officers' version of events.  See Resp.

br., Ex. B at ¶ 7.³  This statement further shows that trial counsel did investigate and made an informed decision to pursue a particular strategy, which this Court, under the circumstances, cannot now second-guess.  See Hess v. Mazurkiewicz, 135 F.3d 905, 908 (3d Cir. 1998).  Thus, Petitioner has not shown that trial counsel made an objectively unreasonable decision and was thus ineffective.

### 4.     Suppression Ruling

Petitioner's claims of error next turn to the performance of his appellate counsel.  He first insists that his appellate counsel provided ineffective assistance by failing to appeal the Court's suppression ruling.  Pet. br. at 10.  In particular, Petitioner argues that this Court erred in finding Officer Rodriguez's testimony sufficiently credible to support the constitutionality of the arrest.  Pet. br. at 15.  The Government responds that Petitioner has not shown how the outcome of the appeal would have been any different had appellate counsel raised the suppression decision on appeal.  Resp. br. at 20.  The Court will deny the petition for relief, but on slightly different grounds than those offered by the Government.

Analysis of ineffective appellate counsel must begin with the presumption that counsel's actions are reasonable.  See Strickland, 466 U.S. at 689.  If a petitioner's claims are not meritorious, his attorney's failure to raise them does not constitute ineffective assistance of counsel.  See U.S. v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000).  Even if a claim is potentially meritorious, appellate counsel need not and should not raise every nonfrivolous claim, but rather

---

³ Petitioner objects to the Government's use of his former counsel's declaration, insisting that it somehow undermines the adversarial system of justice.  See Pet. reply at 12-14.  Be that as it may, Petitioner has not demonstrated how this testimony denied him effective assistance of counsel at trial, nor has he meaningfully refuted his former counsel's position that additional pictures would not have helped.

counsel may choose from among potential claims to "maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000).  Within these constraints, the Supreme Court has held that it is difficult to prove that a lawyer's failure to raise a particular claim in an appeal constitutes ineffective assistance of counsel.  See id.; see also Jones v. Barnes, 463 U.S. 745, 750 (1983) (rejecting "per se rule that appellate counsel must raise every nonfrivolous issue requested by the client").

Here, much of Petitioner's attack is dedicated to rehashing and attacking Officer Rodriguez's testimony.  See Pet. br. at 12-15.  However, relitigating the issues that were before this Court at the suppression hearing is not the proper focus on collateral review.  Instead, Petitioner should have focused on whether his appellate counsel's failure to raise whatever purported errors that occurred at the hearing was unreasonable.  Cf. Jones, 463 U.S. at 751 ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . .").  But unfortunately he did not, and perhaps understandably so.  The record reveals that appellate counsel looked at and considered raising the suppression ruling on appeal, but ultimately determined that likelihood of success was low, and determined that raising it would diminish the impact of other issues.  See Resp. br., Ex. B at ¶ 10.  Moreover, as the Government points out in its papers and with which the Court agrees, even if the issue had been raised on appeal, Petitioner has failed to demonstrate that it would have affected the appellate court's decision.  See Resp. br. at 20-21.  Thus, Petitioner has not demonstrated ineffective assistance of counsel on the suppression issue.

### 5. Obstruction of Justice Enhancement

Petitioner next argues that his appellate counsel was ineffective for failing to appeal the Court's findings on the obstruction of justice enhancement. Pet. br. at 16. Petitioner posits that the Court erred in finding willful conduct and further posits that if his counsel had raised it on appeal, the result would have been different. Pet. br. at 17-18. The Government replies that the Court's findings were correct and that Petitioner has failed to show how the outcome of the appeal would have differed. Resp. br. at 18-19. The Government further insists that Petitioner's trial counsel made a strategic decision not to raise the issue on appeal. Resp. br. at 19-20. The Court finds that Petitioner was not denied effective assistance of counsel on this issue.

An obstruction of justice enhancement may be applied where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct[.]" U.S. Sentencing Guidelines Manual § 3C1.1. The enhancement does not apply where the person merely exercised a constitutional right. U.S. Sentencing Guidelines Manual § 3C1.1 app. 2. However, the adjustment does apply where the defendant commits perjury that pertains to conduct that forms the basis of the offense or where the defendant provides "materially false information to a judge or magistrate." U.S. Sentencing Guidelines Manual § 3C1.1 app. 4(b), (f). Where the enhancement is for perjury, the trial court must make factual findings that the defendant 1) gave false testimony, 2) concerning a material matter, 3) with the willful intent to provide false testimony. U.S. v. Fiorelli, 133 F.3d 218, 221 (3d Cir. 1998). This does not per se require the trial court to make express separate factual findings. Id.

Petitioner seems convinced that the record unequivocally shows that this Court merely punished him for taking the stand at the suppression hearing, and that the obstruction enhancement clearly did not apply. See Pet. reply at 8-10. But Petitioner's certainty is unfounded. Looking at the record as a whole, it is considerably uncertain that if challenged on appeal, the Court's application of the obstruction enhancement would have been reversed. While perhaps the record is not explicit that the Court was not punishing the Petitioner for merely having exercised his rights at the suppression hearing, there is certainly sufficient evidence for the Third Circuit to have concluded that this Court found the elements of perjury satisfied. See, e.g., Pet. br., Ex. B at 80:5-13 (suppression hearing transcript noting Court's belief that Petitioner was not credible); Pet. br., Ex. G at 7-8:22-25, 1-2 (sentencing transcript finding expressly that Petitioner gave willfully false testimony on a material matter). Appellate counsel's failure to raise the issue then seemingly flowed from a reasonable strategic decision, and indeed that is precisely what the declaration of Petitioner's counsel reveals. See Resp. br., Ex. B at ¶ 11 ("In our opinion, an appeal of the Court's application of the obstruction of justice enhancement was a weak argument, given the Court's findings at the sentencing hearing and the standard of review on appeal, with a low likelihood of success on appeal."). Thus, Petitioner has not shown ineffective assistance of counsel.

### 6. Calculation of Criminal History Score

Petitioner's final argument is that his trial counsel was ineffective for conceding that her calculation of his criminal history score was correct. Pet. br. at 19. The Government concedes this error and requests resentencing. Resp. br. at 22. The Court agrees that vacation of the judgment and resentencing is warranted.

Petitioner's sentence was calculated on a criminal history category of IV and an offense level of 22, which calls for a sentencing range of 63-78 months. Petitioner's offense level in part was calculated based on convictions on May 24, 1996 and on December 23, 1997 for separate offenses. In each case he received probation. On November 20, 1998, Petitioner's probation in each case was revoked and he was sentenced to three years incarceration. Petitioner received three points for each revocation of probation under U.S. Sentencing Guidelines Manual § 4A1.2(k). However, the Application Notes to § 4A1.2 reveal that revocation of probation for multiple, separate sentences should only apply to one of the revocations. See U.S. Sentencing Guidelines Manual § 4A1.2 app. 11 ("Where a revocation applies to multiple sentences, and such sentences are counted separately under § 4A1.2(a)(2), add the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal history points."). Thus, Petitioner's criminal history points were overcalculated at seven rather than four, which led to a criminal history category of IV rather than III. The range for a sentence under category III and under an offense level 22 is 51-63 months, below Petitioner's 70 month sentence. At the sentencing hearing, neither Petitioner's trial counsel nor the Government objected to the presentence report with the improper calculation. See Pet. br., Ex. G at 3:8-20.

Given that all parties agree that this error was objectively unreasonable and prejudicial, the Court is compelled to vacate the sentence and to order a resentencing with the appropriate criminal history category of III. Petitioner's Amended Petition is thus granted with respect to the calculation error.

    **B.**    **Certificate of Appealability**

Finally, the Court must assess whether a certificate of appealability should issue. A

litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The Local Appellate Rules for the Third Circuit state:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue . . . . If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

L. App. R. 22.2.

A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28. U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Petitioner's claims here are based on a purported denial of the his Sixth Amendment right to effective counsel. Apart from the calculation error, which warrants resentencing, and based on the analysis above, the Court finds that the bulk of Petitioner's claims are without merit. Reasonable jurists would agree that in each of Petitioner's claims of error, he either did not show that his counsel's actions were unreasonable or he did not show that he suffered any prejudice. Therefore, the Court shall not issue a certificate of appealability.

IV. **CONCLUSION**

For the foregoing reasons, the Amended Petition is **DENIED IN PART** and **GRANTED IN PART**. The Court shall **VACATE** the portion of the judgment of March 2, 2007 in 06-cr-

16

149 (Doc. No. 40) related to sentencing, and shall **RESENTENCE** Tyheem Bookman with an appropriate criminal history category of 3 and an offense level of 22.  The Court **SHALL NOT ISSUE** a certificate of appealability.  An appropriate Order shall follow.


Date:   6/23/10                                                                          /s/ Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge